THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| DARWIN SELECT INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>RK NETMEDIA, INC.; REALITY KINGS, LLC; RK NETMEDIA, LLC; JEFFREY M. GREENBERG; MISTY L. BERMUDEZ; AND CLINTON COX<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) CASE NO.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff DARWIN SELECT INSURANCE COMPANY ("Darwin" or "Plaintiff") is informed and believes and therefore alleges as follows:

### PARTIES

1. Darwin is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Farmington, Connecticut. Darwin is a surplus lines insurance company eligible to do business in Florida under Section 626.918 of the Florida Insurance Law.

2. Defendant RK Netmedia, Inc. is a Florida corporation with its principal place of business in Miami Beach, Florida.

3. Defendant Reality Kings, LLC is a Florida limited liability company with its principal place of business in Miami, Florida, and is a subsidiary of RK Netmedia, Inc.

4. Upon information and belief, Defendant RK Netmedia, LLC is a "dba" of RK Netmedia, Inc., a Florida corporation with its principal place of business in Miami Beach,

Florida. RK Netmedia, Inc., Reality Kings, LLC and RK Netmedia, LLC are referred to hereafter collectively as the RK Defendants.

5. Upon information and belief, Defendant Jeffrey M. Greenberg is an officer of RK Netmedia, Inc., who resides and is domiciled in Florida.

6. Upon information and belief, Defendant Misty L. Bermudez is an employee and/or agent of RK Netmedia, Inc., who resides and is domiciled in Florida.

7. Upon information and belief, Defendant Clinton Cox is an employee and/or agent of RK Netmedia, Inc., who resides and is domiciled in Florida.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the controversy is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to this claim occurred in this District.

## INTRODUCTION

10. Darwin brings this action to obtain a judicial determination and declaration that it is entitled to rescind Media Liability Insurance Coverage Policy No. 0304-9823 issued to Reality Kings, LLC; RK Netmedia, LLC for the September 23, 2009 to September 23, 2010 Policy Period (the "Policy"), and that it is entitled to other relief arising from misrepresentations made to Darwin during the application process. In the alternative, Darwin seeks declarations concerning the operation of the Policy and the coverage afforded thereunder. A copy of the Policy Declarations, Form and Endorsements is attached as Exhibit A.

11. As described in further detail below, in connection with the underwriting of the Policy, Defendants misrepresented and concealed certain material facts concerning the content of videos produced by the RK Defendants, the RK Defendants' practices with respect to obtaining licenses and copyrights for any third party content used in its videos, prior claims made against the RK Defendants, and knowledge of circumstances that may give rise to claims.

12. This information came to light only after an investigation following Darwin's receipt of notice of a lawsuit filed against RK Netmedia, Inc. in July 2010 styled *Warner Bros. Records Inc., et al. v. RK Netmedia, Inc., et al.*, Case No. CV 10-4991-CBM (JEMx) (C.D. Cal.) (the "*Warner Bros.* Action"). The *Warner Bros.* Action alleges, *inter alia*, that RK Netmedia, Inc. and its affiliates had, over the past seven years, infringed hundreds of musical recording and composition copyrights by using the recordings and compositions in their videos without a license or authorization. Darwin acknowledged potential coverage under the Policy for the *Warner Bros.* Action, subject to a full reservation of rights. Among other things, Darwin reserved its right to rescind the Policy and to assert that the *Warner Bros.* Action involved multiple Occurrences.

13. Had Darwin known the true facts, it would not have issued the Policy on the same terms, if at all. Accordingly, Darwin brings this action seeking a judgment of rescission declaring that the Policy is void *ab initio*. Prior to filing this action Darwin returned the premium. Darwin also seeks declarations that the Defendants are liable to Darwin for any damages Darwin may suffer by reason of the misrepresentations and concealments of material facts in the underwriting process. In the alternative, Darwin seeks declarations concerning the operation of the Policy.

## FACTUAL BACKGROUND

### The Underwriting of the Policy

14. As part of the underwriting process for the Policy, the RK Netmedia, Inc. provided Darwin with the following applications on behalf of all the RK Defendants:

    a. Ace Advantage Miscellaneous Professional Liability Application dated August 24, 2009 (the "Ace Miscellaneous Application"). A copy of the Ace Miscellaneous Application is attached as Exhibit B. The Ace Miscellaneous Application was signed by Defendant Jeffery M. Greenberg on behalf of RK Netmedia, Inc., as its CFO.

    b. Ace Advantage Multimedia Liability Application dated August 25, 2009 (the "Ace Multimedia Application"). A copy of the Ace Multimedia Application is attached as Exhibit C. The Ace Multimedia Application was signed by Defendant Greenberg on behalf of RK Netmedia, Inc., as its CFO.

    c. One Beacon Media Advantage Policy Renewal Insurance Application dated March 25, 2009 (the "One Beacon Application"). A copy of the One Beacon Application is attached as Exhibit D. The One Beacon Application was signed by Defendant Clinton Cox on behalf of RK Netmedia, Inc., as its authorized representative.

    d. One Beacon Media Advantage Policy – Film, Program and Theatrical Producer Supplement dated March 25, 2009 (the "One Beacon Supplement"). A copy of the One Beacon Supplement is attached as Exhibit E. The One Beacon Supplement was signed by Defendant Misty L. Bermudez on behalf of RK Netmedia, Inc., as its Insurance and Risk Manager.

    e. Darwin Film and Program Production Supplemental Application (the "Darwin Supplemental Application"). A copy of the Darwin Supplemental Application is

attached as Exhibit F. The Darwin Supplemental Application was signed by Defendant Bermudez on behalf of RK Netmedia, Inc., as its Insurance and Risk Manager.

15. In addition to the above-described applications, Defendants also provided Darwin with a Warranty Letter dated April 30, 2009 (the "Warranty Letter") stating:

> The undersigned, on behalf of the Applicant and after diligent inquiry, warrant that as of April 30, 2009, all claims or suits, or circumstances likely to give rise to a claim have been reported to our previous insurance carrier, and/or disclosed to Darwin Professional Underwriters, Inc. in connection with our application dated April 30, 2009 except as set forth below.
>
> NO KNOW [sic] CLAIMS, SUITS OR LOSSES.
>
> This warranty is material to the acceptance of coverage by Darwin Professional Underwriters, Inc. and the insurers for whom it acts, coverage would not be made available or backdated as requested by the Applicant in the absence of the warranty, and the warranty is made a part of the Application and Insurance Policy.
>
> Further, RK Netmedia Inc. acknowledges that no coverage will be available under insurance placed by Darwin Professional Underwriters, Inc. for any claim, suit, or other circumstance which is listed or required to be listed above.

The Warranty Letter was signed on behalf of the RK Defendants by Defendant Bermudez, as its Insurance and Risk Manager. A copy of the Warranty Letter is attached as Exhibit G.

### **Concealment and Misrepresentations Concerning Film Content**

16. Questions 7(C)(8)(a) and 7(D)(2)(a) of the Ace Multimedia Application asked RK Netmedia, Inc. to "[a]dvise [of the] percentage of ... Original Content created by Applicant." RK Netmedia, Inc. responded "100%" to these questions.

17. RK Netmedia, Inc.'s responses to Questions 7(C)(8)(a) and 7(D)(2)(a) of the Ace Multimedia Application were false. For several years prior to the inception of the Policy, RK Netmedia, Inc. had been using content created by third parties, *e.g.*, sound recordings and musical compositions, in its videos.

18. In the Ace Multimedia Application, RK Netmedia, Inc. represented that "[a]ll content for Applicant is <u>original content</u> created by Applicant and Applicant's exclusive content providers."

19. The foregoing representation made by RK Netmedia, Inc. in the Ace Multimedia Application was false. For several years prior to the inception of the Policy, RK Netmedia, Inc. had been using content created by third parties, *e.g.*, sound recordings and musical compositions, in its videos.

20. In connection with Question 7.a. of the One Beacon Supplement, RK Netmedia, Inc. stated that "[a]ll content is original, written and produced by RK Netmedia."

21. The foregoing representation made by RK Netmedia, Inc. in the One Beacon Supplement was false. For several years prior to the inception of the Policy, RK Netmedia, Inc. had been using content created by third parties, *e.g.*, sound recordings and musical compositions, in its videos.

22. Question 7.e. of the One Beacon Supplement inquired: "Will any … recording … that is unoriginal to the scheduled publication be used in the production?" RK Netmedia, Inc. answered "No" to this question.

23. RK Netmedia, Inc.'s response to Question 7.e. of the One Beacon Supplement was false. For several years prior to the inception of the Policy, RK Netmedia, Inc. had been using content created by third parties, *e.g.*, sound recordings and musical compositions, in its videos.

14491362v1 NEWFILE NEWFILE

## **Concealment and Misrepresentations Concerning Licensing and Copyright**

24. Question 7.a. of the One Beacon Supplement inquired: "Have all licenses, releases or consents been obtained from all performers, artists, musicians, etc., relative to the scheduled production?" RK Netmedia, Inc. answered "Yes" to this question.

25. RK Netmedia, Inc.'s response to Question 7.a. of the One Beacon Supplement was false. For several years prior to the inception of the Policy, RK Netmedia, Inc. had been using sound recordings and musical compositions in its videos without obtaining licenses, releases or consent.

26. Question 8 of the Darwin Supplemental Application inquired: "Have all clearances been obtained, including but not limited to licenses and consents for all third party content, from the following: (a) copyright owners … (b) music owners … (c) performers or persons making appearances … (d) creators … (e) others …." RK Netmedia, Inc. answered "Yes" to each of the subparts (a) – (e) of Question 8 of the Darwin Supplemental Application.

27. RK Netmedia, Inc.'s responses to Question 8(a) – (e) of the Darwin Supplemental Application was false. For several years prior to the inception of the Policy, RK Netmedia, Inc. had been using sound recordings and musical compositions in its videos without obtaining licenses, releases or consent.

28. Question 8.m. of the Ace Multimedia Application inquired: "Does Applicant obtain releases for creative material or talent from … musicians or other third parties supplying **Matter** … to the Applicant?" RK Netmedia, Inc. answered "Yes" to this question.

29. RK Netmedia, Inc.'s response to Question 8.m. of the Ace Multimedia Application was false. For several years prior to the inception of the Policy, RK Netmedia, Inc.

14491362v1 NEWFILE NEWFILE

had been using sound recordings and musical compositions in its videos without obtaining licenses, releases or consent.

### Concealment and Misrepresentations Concerning Prior Claims

30.     Question 12.c. of the Ace Miscellaneous Application inquired: "During the past five years, have any claims or suits been made against the Applicant, any predecessors in business, subsidiaries, affiliates or any principal, director, officer or professional employee?" RK Netmedia, Inc. answered "No" to this question.

31.     RK Netmedia, Inc.'s response to Question 12.c. of the Ace Miscellaneous Application was false. RK Netmedia, Inc. was involved and a defendant in at least two lawsuits within the five years prior to the inception of the Policy, including one pending at the time the Policy incepted. The lawsuit captioned *Molloy v. RK Netmedia, Inc., et al.*, naming RK Netmedia, Inc. as a defendant, was filed on April 15, 2009 in the United States District Court for the Central District of California (the "*Molloy* Action"). The complaint in the *Molloy* Action alleged that RK Netmedia, Inc. and others unlawfully registered websites in the name of adult film star "Flower Tucci." The lawsuit captioned *United States v. Bangbros.Com, Inc., et al.*, naming RK Netmedia, Inc. as a defendant, was filed on July 20, 2005 in this Court (the "*Bangbros* Action"). The complaint in the *Bangbros* Action alleged violations of certain federal statutes relating to advertising and promotion of sexually explicit material.

32.     Question 10.b. of the Ace Multimedia Application inquired: "During the past five years, have any claims or suits been made against the Applicant, or any principals, directors, officers, or employees of the Applicant with respect to any **Media Services** or **Multimedia Acts**?"

14491362v1 NEWFILE NEWFILE

33. RK Netmedia, Inc.'s response to Question 10.b. of the Ace Multimedia Application was false. RK Netmedia, Inc. was involved and a defendant in the *Molloy* Action and *Bangbros* Action, discussed in Paragraph 31, *supra*.

34. Question 3 of the One Beacon Application inquired: "Has the Insured been involved in a media liability lawsuit or claim, which has not yet been reported to the Company?" RK Netmedia, Inc. answered "No" to this question.

35. RK Netmedia, Inc.'s response to Question 3 of the One Beacon Application was false. RK Netmedia, Inc. was involved in both the *Molloy* Action and *Bangbros* Action, and neither of those lawsuits had been reported to Darwin.

36. The Warranty Letter provided to Darwin by RK Netmedia, Inc. stated:

> The undersigned, on behalf of the Applicant and after diligent inquiry, warrant that as of April 30, 2009, all claims or suits, or circumstances likely to give rise to a claim have been reported to our previous insurance carrier, and/or disclosed to Darwin Professional Underwriters, Inc. in connection with our application dated April 30, 2009 except as set forth below.
>
> NO KNOW [sic] CLAIMS, SUITS OR LOSSES.

37. The foregoing statement by in the Warranty Letter that there were "NO KNOW [sic] CLAIMS, SUITS OR LOSSES" was false. RK Netmedia, Inc. was involved and a defendant in the *Molloy* Action and *Bangbros* Action, and neither of those lawsuits had been reported to Darwin.

### Concealment and Misrepresentations Concerning Prior Knowledge

38. Question 12.a. of the Ace Miscellaneous Application inquired: "After inquiry, do any principals, directors, officers, partners, professional employees or independent contractors of the Applicant have knowledge or information of any actual or alleged acts, errors, omissions,

offenses or circumstances which might reasonably be expected to give rise to a claim against the Applicant or any proposed insured entity?" RK Netmedia, Inc. answered "No" to this question.

39. Question 10.a. of the Ace Multimedia Application inquired: ""After inquiry, do any principals, directors, officers, partners, employees, or independent contractors of the Applicant have knowledge or information of any actual or alleged acts, errors, omissions, offenses or circumstances with respect to any **Media Services** or **Multimedia Acts** which might reasonably be expected to give rise to a claim against the Applicant or any proposed insured entity?" RK Netmedia, Inc. answered "No" to this question.

40. RK Netmedia, Inc. stated in the Warranty Letter that

> The undersigned, on behalf of the Applicant and after diligent inquiry, warrant that as of April 30, 2009, all claims or suits, or circumstances likely to give rise to a claim have been reported to our previous insurance carrier, and/or disclosed to Darwin Professional Underwriters, Inc. in connection with our application dated April 30, 2009 except as set forth below.
>
> NO KNOW [sic] CLAIMS, SUITS OR LOSSES.

41. Upon information and belief, RK Netmedia, Inc.'s responses to Question 12.a. of the Ace Miscellaneous Application, Question 10.a. of the Ace Multimedia Application, and its statement in the Warranty Letter as set forth in paragraph 40, *supra*, were false. RK Netmedia, Inc. is a sophisticated media company that has produced hundreds of videos, and holds hundreds of copyrights in connection with its videos. As a result, the principals, directors, officers, partners, and/or professional employees of RK Netmedia, Inc. are familiar with copyright and licensing laws, and often utilize legal counsel in connection with copyright and licensing issues. The principals, directors, officers, partners and/or professional employees of RK Netmedia, Inc. were also aware, prior to the inception of the Policy, that RK Netmedia, Inc. was engaged in the unlawful practice of using sound recordings and musical compositions in its videos without

obtaining licenses, releases or consent. Thus, the principals, directors, officers, partners, and/or professional employees of RK Netmedia, Inc. each had knowledge of acts and circumstances which might reasonably be expected to give rise to a claim against RK Netmedia, Inc.

### COUNT ONE
### (Rescission)

42. Darwin reasserts and re-alleges Paragraphs 1-41 as if fully set forth herein.

43. Section V.(J) of the Policy provides:

> The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete, and agrees that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and to constitute a part of this Policy, are the basis of this Policy.

44. Section III.(C) of the Policy defines "**Application**" to mean:

    (1) the application submitted to the **Insurer**; or

    (2) any application submitted to any competitor of the **Insurer**, which is provided to the **Insurer** for the purposes of procuring coverage hereunder, and which shall be treated as if it were submitted directly to the **Insurer**;

> any and all materials and information submitted to the **Insurer** in connection with any such application, and all publicly available material promulgated by the **Insured** about the **Insured** that the **Insurer** obtained prior to the Inception Date of the Policy, all of which are deemed to be on file with the **Insurer** and are deemed to be attached to, and form a part of, this Policy as if physically attached.

45. Defendants made material misrepresentations in connection with the application for and underwriting of the Policy as more fully described above, including: (1) falsely representing that 100% of the RK Defendants' content was original; (2) falsely representing that the RK Defendants obtained the required licenses, releases and consents for any third party content used in its videos; (3) falsely representing that they were not aware of any circumstances

that may result in a claim; and (4) falsely representing that no claims had been made against the RK Defendants in the five years preceding the application for the Policy.

46. The misrepresentations were material because had Defendants provided accurate information to Darwin, Darwin would have declined to issue the Policy on the same terms, if at all.

47. Upon information and belief, one or more officers, directors, partners, counsel, or risk managers of the RK Defendants, or one or more of the signor(s) of the Applications described above, knew of such misrepresentations, or omissions in the Application.

48. Defendants' material misrepresentations entitle Darwin to rescind the Policy under common law and/or under the standards set forth in Fla. Stat. 627.409.

49. Defendants dispute that Darwin is entitled to rescind the Policy. Therefore, an actual and justiceable controversy exists between Darwin and Defendants.

50. Darwin is entitled to a declaratory judgment that the Policy is rescinded and that the parties are to be put in the *status quo ante* as there is no other adequate remedy at law.

WHEREFORE, Darwin respectfully requests that this Court:

(A) Enter judgment declaring that the Policy is void and/or rescinded and returning the parties to the *status quo ante*; and

(B) Award Darwin all other relief to which it may be entitled.

### COUNT TWO
### (Declaratory Relief)

51. Darwin reasserts and re-alleges Paragraphs 1-50 as if fully set forth herein.

52. Defendants made material misrepresentations in connection with the application for and underwriting of the Policy as more fully set forth above, including: (1) falsely representing that 100% of the RK Defendants' content was original; (2) falsely representing that

the RK Defendants obtained the required licenses, releases and consents for any third party content used in its videos; (3) falsely representing that they were not aware of any circumstances that may result in a claim; and (4) falsely representing that no claims had been made against the RK Defendants in the five years preceding the application for the Policy.

53. Defendants made these misrepresentations either with knowledge of their falsity, or without reasonable grounds for believing them to be true, for the purpose of inducing Darwin to issue the Policy on the terms and in the form it was issued.

54. Darwin was ignorant of the falsity of the above-referenced representations, and reasonably and justifiably relied upon the accuracy and truthfulness of those representations in issuing the Policy. Had Defendants provided accurate information to Darwin, Darwin would have declined to issue the Policy.

55. Because Darwin would have declined to issue the Policy but for Defendants' misrepresentations and concealment described above, any amounts paid or incurred by Darwin under the Policy constitute damages which are the direct and proximate result of Defendants' misrepresentations and concealment.

56. Defendants dispute that any payments that may be made or incurred by Darwin under the Policy would constitute damages resulting from Defendants' misrepresentations and concealment. Therefore, an actual and justiciable controversy exists between Darwin and Defendants regarding Defendants' liability for such amounts.

57. Darwin asks that the Court declare that Defendants are liable to Darwin for any amounts paid or incurred by Darwin under the Policy, including any future payments Darwin may make to or on behalf of any Insured under the Policy.

WHEREFORE, Darwin respectfully requests that this Court:

(A) Enter judgment declaring that Defendants are liable to Darwin for any payments made by Darwin under the Policy, including any future payments to or on behalf of any Insured under the Policy; and

(B) Award Darwin all other relief to which it may be entitled.

## COUNT THREE
### (In the Alternative, Declaratory Relief)

58. Darwin reasserts and re-alleges Paragraphs 1-57 as if fully set forth herein.

59. Section V.(B) of the Policy provides that "The obligation of the **Insurer** to pay **Loss** or **Defense Expenses** will only be in excess of the applicable Retention set forth in ITEM 4 of the Declarations …. The **Insurer** will have no obligation whatsoever, either to the **Insured** or to any other person or entity, to pay all or any portion of any Retention amount on behalf of any **Insured** …."

60. The applicable Retention set forth in ITEM 4 of the Declarations, with respect to the *Warner Bros.* Action, is $100,000 each and every **Occurrence**.

61. "**Occurrence**" is defined in Policy Section III.(T), in pertinent part, as "any broadcast, transmission, utterance, telecast, cablecast, serialization or production of **Matter**," "any publication or republication of **Matter**," "any online dissemination of **Matter**," or "the release [or] distribution … of **Matter**."

62. "**Matter**" is defined in Policy Section III.(Q), in pertinent part, as "any communication, regardless of its nature or form, including but not limited to … film … and video."

63. With respect to the number of **Occurrences**, Section III.(T) of the Policy provides in relevant part "[w]here **Occurrences** take place on one or more dates during the Policy Period … involving the same or related subject, event, situation, person or class of persons, irrespective

of the nature of the **occurrences** or the number of repetitions, versions or forms of **Occurrences** ... such **Occurrences** shall be considered a single **Occurrence** subject to the Limit of Liability and Retention in effect when the first **Occurrence** took place ...."

64.     In the *Warner Bros.* Action, it is alleged that the defendants therein produced and broadcast 195 separate videos. Each of those videos allegedly contained one or more musical compositions and/or sound recordings for which the defendants had failed to obtain permission to use. The musical compositions and/or sound recordings at issue in the *Warner Bros.* Action varied by video. Plaintiffs in the *Warner Bros.* Action seek separate statutory or actual damages for the works allegedly infringed in each separate video, and the profits obtained for each separate video. A copy of the operative First Amended Complaint in the *Warner Bros.* Action is attached hereto as Exhibit H.

65.     Each video at issue in the *Warner Bros.* Action broadcast or disseminated by Defendants constitutes a separate "**Occurrence**" within the meaning of the Policy, and so is subject to a separate $100,000 retention.

66.     On information and belief, Defendants dispute that separate retentions apply to each video at issue in the *Warner Bros.* Action, and instead assert that a single retention of $100,000 is applicable for the entire *Warner Bros.* Action. Therefore, an actual and justiciable controversy exists between Darwin and Defendants regarding the applicable retention and the parties' respective rights and obligations under the Policy in connection therewith.

67.     Thus, as alternative relief sought herein, and until such time as the Court declares the Policy rescinded and void *ab initio*, Darwin asks that the Court declare that each video at issue in the *Warner Bros.* Action constitutes a separate "**Occurrence**" subject to a separate

$100,000 retention, and that Darwin has no obligation to pay **Loss** or **Defense Expenses** until the applicable retentions have been satisfied in accordance with the Policy.

WHEREFORE, Darwin respectfully requests that this Court:

(A)    Enter judgment declaring that each video at issue in the *Warner Bros.* Action constitutes a separate "**Occurrence**" subject to a separate $100,000 retention, and that Darwin has no obligation to pay **Loss** or **Defense Expenses** until the applicable retentions have been satisfied in accordance with the Policy; and

(B)    Award Darwin all other relief to which it may be entitled.

Dated: October 19, 2010

Respectfully Submitted,

_/s/_____
*One of the Attorneys for Darwin*

Ronald L. Kammer, #360589
HINSHAW & CULBERTSON, LLP
9155 South Dadeland Blvd.
Suite 1600
Miami, FL 33156
305-428-5100
rkammer@hinshawlaw.com

*Of Counsel*

Terrence R. McInnis
Kevin F. Kieffer
Daniel C. Streeter
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614
(949) 622-2700
terrence.mcinnis@troutmansanders.com
kevin.kieffer@troutmansanders.com
daniel.streeter@troutmansanders.com